## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

DAVID VOBORA, ) Cause No.
)
    Plaintiff, ) **JURY TRIAL DEMANDED**
)
vs. )
)
S.W.A.T.S., a business entity, form unknown; MITCH )
ROSS, an individual; and DOES 1-30, inclusive, )
)
    Defendants )
_____)

## COMPLAINT FOR DAMAGES

COMES NOW David Vobora, and for his Complaint against S.W.A.T.S., a

business entity, form unknown; MITCH ROSS, an individual; and DOES 1-30, inclusive,

states as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff David Vobora is, and at all times material was, a resident of St.

Peters, Missouri.

2.    Plaintiff is informed and believes, and thereon alleges, that defendant

S.W.A.T.S. (hereinafter "SWATS") is, and at all material times was, a business entity,

form unknown, with its principle place of business in Fultondale, Alabama, transacting

business within this judicial district.

1

3.     Plaintiff is informed and believes, and thereon alleges, that defendant Mitch Ross is, and at all material times was, an individual residing in Alabama, and the owner of SWATS.

4.     Plaintiff brings this action pursuant to 28 U.S.C. §1332. Plaintiff is a citizen and resident of St. Peters, Missouri; each of the defendants are either (a) a business entity having its principle place of business in the State of Alabama, or (b) a citizen and resident of the State of Alabama; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue is appropriate pursuant to 28 U.S.C. §1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

6.     The true names and capacities of defendants, sued herein under § 474 of the Code of Civil Procedure as Does 1-30, inclusive, are presently unknown to plaintiff. Plaintiff is informed and believes, and upon such information and belief, alleges that each of the defendants designated herein as fictitiously named defendants are in some way, manner or form, and to some extent responsible for the acts, events and happenings hereinafter alleged and referred to, and that each of these defendants in some way, manner or form and to some extent caused detriment, damage and injury to plaintiffs as hereinafter alleged. At the time plaintiff ascertains the precise basis of liability, and the true names and capacities of fictitiously named defendants, plaintiff will seek leave to amend this complaint by setting forth the same. Wherever appearing in this complaint, each and every reference to "defendants" is intended to be, and shall be, a reference to all defendants in this action, and to each of them, including all fictitiously named defendants.

2

7.     Plaintiff is informed and believes, and thereon alleges, that each and every act, event and happening hereinafter alleged to have been done, caused, suffered, allowed and permitted by defendants, or any of them, was done, caused, suffered, allowed and permitted by each and every defendant in his, her or its capacity and in the course of his, her or its duty as the agent, principal, employer, employee and/or representative of each and every other defendant.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.     Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 7 of this complaint as though each were set forth and alleged herein in full.

### *SWATS*

9.     Defendants, and each of them, made and sold "Ultimate Sports Spray," a purported nutritional supplement. Defendants, and each of them, represented that "The S.W.A.T.S Program is about Christian role models teaching all athletes--from youth athletes to professionals--about character and staying drug free from steroids as well as recreational drugs and alcohol"; and that "The Sports With Alternatives To Steroids (S.W.A.T.S) Program is a unique and exclusive program that uses current and former professional, drug-free athletes—from every sport—as role models to teach youth athletes about character and staying free from illegal steroids, recreational drugs, nicotine, and alcohol."

### *David Vobora*

10.     At the time that the facts in this complaint occurred, David Vobora was a starting linebacker in the National Football League for the St. Louis Rams.

3

11.     Prior to June 11, 2009, it was recommended to plaintiff by a "SWATS athlete endorser" that plaintiff use the "Ultimate Sports Spray." Prior to that recommendation, plaintiff had never used any SWATS supplement, and had never used any supplements manufactured or sold by defendants. Plaintiff researched SWATS supplements, and satisfied himself through his research that SWATS "Ultimate Sports Spray" did not contain any substances that were banned and/or prohibited from use in the National Football League. Based on his own research and recommendations to him, plaintiff accepted the SWATS "Ultimate Sports Spray" from the "SWATS athlete endorser", and used the SWATS "Ultimate Sports Spray" up to and through June 11, 2009.

12.     Prior to taking SWATS "Ultimate Sports Spray," plaintiff David Vobora read literature on SWATS and its products. With respect to SWATS "Ultimate Sports Spray," plaintiff David Vobora reaffirmed the product use with his colleagues, and read the label. Each source confirmed the product was appropriate for Plaintiff's needs and endorsed the consumption of it as safe and free from any substance that could disqualify him from competition, including, but not limited to, the anti-doping regulations of the National Football League "NFL"). Plaintiff took these precautions to ensure compliance with all of these regulations that governed his sport.

13.     As a professional football player, plaintiff David Vobora was subject to regular drug testing by the NFL. On June 11, 2009, plaintiff David Vobora provided a urine sample for testing by the NFL (hereinafter "urine sample"). According to normal collection procedures, the urine sample was divided into an "A" sample and a "B" sample, and then sealed in tamper-proof containers.

4

.    14.     The urine sample was analyzed in the WADA-accredited laboratory in Los

Angeles, California (hereinafter "UCLA Laboratory"). The UCLA Laboratory reported

that the "A" sample of plaintiff's urine sample contained the prohibited substance 17 $\alpha$-

methyl-5$\beta$-androstan-3$\alpha$, 17$\beta$-diol. This finding was later confirmed by the UCLA

Laboratory through the testing of the "B" sample of plaintiff's urine sample.

15.     The ingestion of methyltestosterone results in the urinary excretion of 17

$\alpha$-methyl-5$\beta$-androstan-3$\alpha$, 17$\beta$-diol which causes positive results in urine testing used to

determine the presence of banned substances in athletes participating in the NFL.

16.     The substance 17 $\alpha$-methyl-5$\beta$-androstan-3$\alpha$, 17$\beta$-diol is a known

metabolite of methyltestosterone, which is banned by most athletic federations, including

but not limited to, the NFL; and which is a Schedule III Controlled Substance under the

Anabolic Steroids Act of 1990. The sanction when football player tests positive for a

banned substance such as methyltestosterone (or its metabolites) can include, but is not

limited to, suspension from competition without pay for four games for a first positive

test.

17.     As a result of testing positive for a banned substance, plaintiff David

Vobora was suspended by the NFL without pay, for a period of four (4) games. The

unpaid suspension was served by plaintiff David Vobora during the 2009 NFL regular

season.

18.     As a result of his suspension, plaintiff David Vobora missed four

important games for the St. Louis rams during the 2009 regular season. In addition, he

has suffered a loss of income derived from football-related endorsements and

performance incentives. Furthermore, Plaintiff's reputation is permanently tarnished.

*Discovery of Contamination of SWATS "Ultimate Sports Spray"*

19.    In or about August 2009, plaintiff David Vobora, through his representatives, sent the bottle of SWATS "Ultimate Sports Spray" that he was using at the time of his positive drug test, lot number 1715, to Aegis Sciences Corp., in Nashville, Tennessee (hereinafter "Aegis") for testing for contamination with steroids (hereinafter referred to as "Vobora bottle"). The Vobora bottle of SWATS "Ultimate Sports Spray" was received by Aegis on August 5, 2009. On September 11, 2009, Aegis reported that the Vobora bottle of SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

## COUNT I - NEGLIGENCE (AGAINST ALL DEFENDANTS)

20.    Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 19 of this Complaint as though each are set forth and alleged herein in full.

21.    At all times relevant to this Complaint, Defendants, and each of them, engaged in the business of manufacturing, marketing, distributing, and selling SWATS "Ultimate Sports Spray" to athletes and members of the general public.

22.    At all times relevant to this Complaint, SWATS "Ultimate Sports Spray", a product contaminated with unlabeled substances, was distributed and sold to stores, in and around St. Louis, Missouri, and elsewhere throughout the United States. SWATS "Ultimate Sports Spray" was made available to athletes and the general public who consumed it in a manner intended by defendants at the time of its sale.

23.    At the time SWATS "Ultimate Sports Spray" was produced, distributed, and sold by Defendants, and each of them, defendants owed a duty to exercise reasonable

6

care and caution in the production of its products and in the subsequent distribution and sale of those products to athletes and the general public to ensure that those products were safe, wholesome, and otherwise fit for consumption by competitive athletes and the general public.

24.     Notwithstanding the aforementioned duties, Defendants, and each of them, were negligent and failed to exercise ordinary care in performing their duties to plaintiff. Such negligent acts and omissions include, but are not limited to the following:

        a.     Carelessly and negligently failed to properly maintain the production facility in that during the production process SWATS "Ultimate Sports Spray" was allowed to become contaminated with methyltestosterone;

        b.     Carelessly and negligently failed to monitor the production of SWATS "Ultimate Sports Spray" although it knew or should have known of the existence of contamination;

        c.     Carelessly and negligently offered for sale to athletes products contaminated with methyltestosterone;

        d.     Carelessly and negligently failed to shutdown its production facility although it knew or should have known of the existence of the contamination;

        e.     Carelessly and negligently failed to warn athletes of the contamination in SWATS "Ultimate Sports Spray" as heretofore described;

        f.     Carelessly and negligently failed to design a safe manufacturing process that would have eliminated the possibility of cross contamination in products;

        g.     Carelessly and negligently failed to adequately test supplements;

7

h.    Carelessly and negligently failed to provide accurate information for product users to make informed decisions;

i.    Carelessly and negligently failed to adequately clean machinery;

j.    Carelessly and negligently failed to adhere to industry standards;

k.    Carelessly and negligently failed to adhere to government regulations in manufacturing SWATS "Ultimate Sports Spray";

l.    Carelessly and negligently allowed improper methods of operation; and

m.    Carelessly and negligently failed to disclose known dangers.

25.    At the time and place of the events described herein, Defendants, and each of them, owed a duty of reasonable care to plaintiff to avoid causing injury to plaintiff.

26.    As a direct and proximate result of the acts and omissions of Defendants, and each of them, plaintiff suffered injuries. Said injuries include but are not limited to physical contamination and intrusion of plaintiff's bodies, including contamination with dangerous substances that are harmful to plaintiff injuring him in such a way as to not be able to complete his duties and job as a professional football player. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and plaintiff's reputation. As a consequence of these injuries, plaintiff has incurred the following damages in amounts to be proven at trial:

a.    Loss of past income and earning capacity in an amount to be proven at trial;

b.    Loss of income and earning capacity which plaintiff can reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

8

c. Past and future pain, suffering and humiliation in an amount to be set forth at trial; and

d. Loss of enjoyment of life, past and future, in an amount to be set forth at trial.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against defendants, and each of them as follows:

a. Judgment for Plaintiff against Defendants, and each of them, for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

b. Judgment for Plaintiff against Defendants, and each of them, for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

c. Judgment for Plaintiff against Defendants, and each of them, in an amount as supported by the allegations in this Complaint and the evidence adduced at trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be awarded such other costs and relief as the court deems just and equitable.

## COUNT II - STRICT PRODUCTS LIABILITY (AGAINST ALL DEFENDANTS)

27. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 26 of this Complaint as though each were set forth and alleged herein in full.

28. At all times relevant to this Complaint, Defendants, and each of them, were in the business of manufacturing, processing, distributing, and selling the above-mentioned products for consumption by athletes.

29.     At all times relevant to this Complaint, SWATS "Ultimate Sports Spray" was manufactured, processed, and distributed by defendants and placed into the stream of commerce and sold at stores, to plaintiff and the general public while SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

30.     Plaintiff ingested the contaminated product SWATS "Ultimate Sports Spray", doing so in a manner that was reasonable foreseeable and intended by Defendants, and each of them, at the time the product was manufactured, processed, distributed, and sold to plaintiff.

31.     Prior to and at the time of the occurrence described above, the product SWATS "Ultimate Sports Spray" was defective for its intended use in one or more of the following respects:

        a.     SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

        b.     No warning was given to plaintiff or the general public that the product contained methyltestosterone or was otherwise unfit for consumption.

        c.     The instructions provided by defendants for SWATS "Ultimate Sports Spray" failed to advise or inform any and all foreseeable users, such as plaintiff, of the hidden dangers that would arise from a reasonably anticipated use of SWATS "Ultimate Sports Spray".

32.     One or more of the foregoing conditions made SWATS "Ultimate Sports Spray" unreasonably fit, suitable or safe for its intended purpose because it failed to contain or provide adequate warnings, labeling or instructions, namely that SWATS

10

"Ultimate Sports Spray" contained methyltestosterone. Furthermore, Defendants, and each of them, knew or reasonably should have known of this condition at that time.

33. Defendants, and each of them, failed to act in a reasonably prudent manner in marketing SWATS "Ultimate Sports Spray" or in providing any warnings on the label of SWATS "Ultimate Sports Spray" or on the website regarding the contents of the product.

34. Furthermore, Defendants, and each of them, manifested a knowing and reckless indifference toward, and a disregard for the rights of athletes and consumers to make informed decisions about the products they purchase and consume. Defendants, and each of them, failed to accurately disclose the supplement ingredients on the label.

35. As a proximate result of one or more of the foregoing defective conditions, making this product unreasonably fit, suitable or safe for its intended use when this product left the control of Defendants, and each of them, plaintiff ingested the contaminated product and sustained injuries. As a consequence of these injuries, plaintiff has sustained damages. Said damages include but are not limited to physical contamination and intrusion of plaintiff's bodies, including contamination with dangerous substances that are harmful to plaintiff injuring him in such a way as to not be able to complete his duties and job as a professional football player. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and plaintiff's reputation. As a consequence of these injuries, plaintiff has incurred the following damages in amounts to be proven at trial:

a. Loss of past income and earning capacity in an amount to be proven at trial;

11

b. Loss of income and earning capacity which plaintiff can

reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

c. Past and future pain, suffering and humiliation in an amount to be set forth at trial; and

d. Loss of enjoyment of life, past and future, in an amount to be set forth at trial.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against defendants, and each of them as follows:

a. Judgment for Plaintiff against Defendants, and each of them, for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

b. Judgment for Plaintiff against Defendants, and each of them, for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

c. Judgment for Plaintiff against Defendants, and each of them, for punitive damages in an amount consistent with the allegations contained herein and to be proven at trial.

d. Judgment for Plaintiff against Defendants, and each of them, in an amount as supported by the allegations in this Complaint and the evidence adduced at trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be awarded such other costs and relief as the court deems just and equitable.

## **COUNT III - BREACH OF IMPLIED WARRANTY (AGAINST ALL**

## **DEFENDANTS)**

12

36.     Plaintiff repeats and realleges all of the allegations contained in
paragraphs 1 through 35 of this Complaint as though each were set forth and alleged
herein in full.

37.     At all times hereinafter mentioned, Defendants, and each of them, owed to
plaintiff a warranty that goods shall be merchantable; and fit for the ordinary purposes for
which such goods are used; and conform to the promises or affirmations of fact made on
the container or label.

38.     Defendants, and each of them, represented that "The S.W.A.T.S Program
is about Christian role models teaching all athletes--from youth athletes to professionals--
about character and staying drug free from steroids as well as recreational drugs and
alcohol"; and that "The Sports With Alternatives To Steroids (S.W.A.T.S) Program is a
unique and exclusive program that uses current and former professional, drug-free
athletes—from every sport—as role models to teach youth athletes about character and
staying free from illegal steroids, recreational drugs, nicotine, and alcohol."

39.     Notwithstanding the aforementioned warranty, Defendants, and each of
them, manufactured and sold the product, which was unfit for consumption as the product
was contaminated with methyltestosterone.

40.     As a consequence of the injuries resulting from defendants' breach of
implied warranty, plaintiff has sustained damages. Said damages include but are not
limited to physical contamination and intrusion of plaintiff's bodies, including
contamination with dangerous substances that are harmful to plaintiff injuring him in
such a way as to not be able to complete his duties and job as a professional football
player. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and

13

plaintiff's reputation. As a consequence of these injuries, plaintiff has incurred the
following damages in amounts to be proven at trial:

a. Loss of past income and earning capacity in an amount to be
proven at trial;

b. Loss of income and earning capacity which plaintiff can
reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

c. Past and future pain, suffering and humiliation in an amount to be
set forth at trial; and

d. Loss of enjoyment of life, past and future, in an amount to be set
forth at trial.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and
against defendants, and each of them as follows:

a. Judgment for Plaintiff against Defendants, and each of them, for
general damages in an amount consistent with the allegations contained herein and to be
proven at trial.

b. Judgment for Plaintiff against Defendants, and each of them, for
special damages in an amount consistent with the allegations contained herein and to be
proven at trial.

c. Judgment for Plaintiff against Defendants, and each of them, in an
amount as supported by the allegations in this Complaint and the evidence adduced at
trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be
awarded such other costs and relief as the court deems just and equitable.

14

## COUNT IV - INTENTIONAL MISREPRESENTATION (AGAINST ALL DEFENDANTS)

41.    Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 40 of this Complaint as though each were set forth and alleged herein in full.

42.    Upon information and belief, Defendants, and each of them, intentionally and recklessly misrepresented the following material facts regarding the quality and contents of SWATS "Ultimate Sports Spray":

a.    Defendants, and each of them, failed to disclose that SWATS "Ultimate Sports Spray" contained methyltestosterone.

b.    Defendants, and each of them, falsely represented "The S.W.A.T.S Program is about Christian role models teaching all athletes--from youth athletes to professionals--about character and staying drug free from steroids as well as recreational drugs and alcohol", when in fact, SWATS "Ultimate Sports Spray" contained methyltestosterone which was not disclosed on the product labeling.

c.    Defendants, and each of them, falsely represented that "The Sports With Alternatives To Steroids (S.W.A.T.S) Program is a unique and exclusive program that uses current and former professional, drug-free athletes—from every sport—as role models to teach youth athletes about character and staying free from illegal steroids, recreational drugs, nicotine, and alcohol," when, in fact, SWATS "Ultimate Sports Spray" contained methyltestosterone which was not disclosed on the product labeling.

43.    Upon information and belief Defendants, and each of them, knew that the facts of such representations were not true; and made these representations with the

intention of misleading potential customers as to the actual content of SWATS "Ultimate Sports Spray."

44. The misrepresentations made by Defendants, and each of them, were made contrary to duties imposed under common law, and by Federal and State statutory obligations.

45. The misrepresentations made by Defendants, and each of them, were made with a knowing and reckless indifference toward, and a disregard for the rights of athletes and consumers to make informed decisions about the products they purchase and consume.

46. The contents of SWATS "Ultimate Sports Spray", namely that it contained methyltestosterone, was a direct and proximate cause of the injuries and damages suffered by plaintiff.

47. Except for defendants' representations regarding the label, safety, purity, appropriateness and quality of SWATS "Ultimate Sports Spray", plaintiff would never have purchased or used it.

48. Upon information and belief, Defendants, and each of them, knew that the product, SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

49. At all times relevant to this Complaint, SWATS "Ultimate Sports Spray" was distributed for and was sold to competitive athletes and consumers, who consumed the product in the manner intended by defendants at the time of the product's manufacture and sale.

50. At the time consumers, including plaintiff, used SWATS "Ultimate Sports Spray", they did so in reliance upon defendants' representations made directly by

16

defendants, through and at its facilities or through websites, representatives, signs, advertising and labeling. These representations were made in such a manner that plaintiff and other consumers heard or otherwise believed that SWATS "Ultimate Sports Spray" was safe or otherwise fit for consumption.

51.    At the time the representations were made, they were untrue, as the product was not reasonably safe or otherwise fit for consumption by the plaintiff or other consumers.

52.    At the time plaintiff used SWATS "Ultimate Sports Spray", Defendants, and each of them, made or permitted untrue representations about the quality and contents of SWATS "Ultimate Sports Spray" to be made. Upon information and belief, Defendants made these representations recklessly, knowing that the product SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

53.    Plaintiff, relying up and believing the representations made by and on behalf of Defendants, and each of them, consumed SWATS "Ultimate Sports Spray."

54.    As a direct and proximate result of plaintiff's reliance on defendants' untrue representations, plaintiff consumed the contaminated product SWATS "Ultimate Sports Spray" and sustained injuries. As a consequence of these injuries, plaintiff has sustained damages. Said damages include but are not limited to physical contamination and intrusion of plaintiff's bodies, including contamination with dangerous substances that are harmful to plaintiff injuring him in such a way as to not be able to complete his duties and job as a professional football player. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and plaintiff's reputation. As a consequence of these injuries, plaintiff has incurred the following damages in amounts to be proven at trial:

      a.      Loss of past income and earning capacity in an amount to be proven at trial;

      b.      Loss of income and earning capacity which plaintiff can reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

      c.      Past and future pain, suffering and humiliation in an amount to be set forth at trial; and

      d.      Loss of enjoyment of life, past and future, in an amount to be set forth at trial.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against defendants, and each of them as follows:

      a.      Judgment for Plaintiff against Defendants, and each of them, for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

      b.      Judgment for Plaintiff against Defendants, and each of them, for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

      c.      Judgment for Plaintiff against Defendants, and each of them, for punitive damages in an amount consistent with the allegations contained herein and to be proven at trial.

      d.      Judgment for Plaintiff against Defendants, and each of them, in an amount as supported by the allegations in this Complaint and the evidence adduced at trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be awarded such other costs and relief as the court deems just and equitable.

18

## COUNT V - NEGLIGENT MISREPRESENTATION (AGAINST ALL

## DEFENDANTS)

55. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 54 of this Complaint as though each were set forth and alleged herein in full.

56. Defendants, and each of them, negligently and recklessly misrepresented the following material facts regarding the quality and contents of SWATS "Ultimate Sports Spray":

a. Defendants, and each of them, failed to disclose that SWATS "Ultimate Sports Spray" contained methyltestosterone.

b. Defendants, and each of them, falsely represented "The S.W.A.T.S Program is about Christian role models teaching all athletes--from youth athletes to professionals--about character and staying drug free from steroids as well as recreational drugs and alcohol", when in fact, SWATS "Ultimate Sports Spray" contained methyltestosterone which was not disclosed on the product labeling.

c. Defendants, and each of them, falsely represented that "The Sports With Alternatives To Steroids (S.W.A.T.S) Program is a unique and exclusive program that uses current and former professional, drug-free athletes—from every sport—as role models to teach youth athletes about character and staying free from illegal steroids, recreational drugs, nicotine, and alcohol," when, in fact, SWATS "Ultimate Sports Spray" contained methyltestosterone which was not disclosed on the product labeling.

57. These misrepresentations were made under circumstances in which Defendants, and each of them, either knew, or in the exercise of reasonable care should

19

have known, that the facts of such representations were not true, or were not known to be true.

58.     The misrepresentations made by Defendants, and each of them, were made contrary to duties imposed under common law, and by Federal and State statutory obligations.

59.     The contents of SWATS "Ultimate Sports Spray", namely that it contained methyltestosterone, were a direct and proximate cause of the injuries and damages suffered by plaintiff.

60.     Except for defendants' representations regarding the label, safety, purity, appropriateness and quality of SWATS "Ultimate Sports Spray", plaintiff would never have purchased or used it.

61.     Defendants, and each of them, knew or through the exercise of reasonable care should have known that the product, SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

62.     At all times relevant to this Complaint, SWATS "Ultimate Sports Spray" was distributed for and was sold to competitive athletes and consumers, who consumed the product in the manner intended by defendants at the time of the product's manufacture and sale.

63.     At the time consumers, including plaintiff, used SWATS "Ultimate Sports Spray", they did so in reliance upon defendants' representations made directly by defendants, through and at its facilities or through websites, representatives, signs, advertising and labeling. These representations were made in such a manner that plaintiff

20

and other consumers heard or otherwise believed that SWATS "Ultimate Sports Spray" was safe or otherwise fit for consumption.

64.    At the time the representations were made, they were untrue, as the product was not reasonably safe or otherwise fit for consumption by the plaintiffs or other consumers.

65.    At the time plaintiff used SWATS "Ultimate Sports Spray", Defendants, and each of them, made or permitted untrue representations about the quality and contents of SWATS "Ultimate Sports Spray" to be made. Defendants knew or made these representations recklessly, knowing the lack of sufficient knowledge upon which to base such representation.

66.    Plaintiff, relying up and believing the representations made by and on behalf of Defendants, and each of them, consumed SWATS "Ultimate Sports Spray."

67.    As a direct and proximate result of plaintiff's reliance on defendants' untrue representations, plaintiffs consumed the contaminated product SWATS "Ultimate Sports Spray" and sustained injuries. As a consequence of these injuries, plaintiff has sustained damages. Said damages include but are not limited to physical contamination and intrusion of plaintiff's bodies, including contamination with dangerous substances that are harmful to plaintiff injuring him in such a way as to not be able to complete his duties and job as a professional football player. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and plaintiff's reputation. As a consequence of these injuries, plaintiff has incurred the following damages in amounts to be proven at trial:

    a.    Loss of past income and earning capacity in an amount to be proven at trial;

      b.      Loss of income and earning capacity which plaintiff can

reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

      c.      Past and future pain, suffering and humiliation in an amount to be set forth at trial; and

      d.      Loss of enjoyment of life, past and future, in an amount to be set forth at trial.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against defendants, and each of them as follows:

      a.      Judgment for Plaintiff against Defendants, and each of them, for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

      b.      Judgment for Plaintiff against Defendants, and each of them, for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

      c.      Judgment for Plaintiff against Defendants, and each of them, in an amount as supported by the allegations in this Complaint and the evidence adduced at trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be awarded such other costs and relief as the court deems just and equitable.

# COUNT VI - VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT, MISSOURI REVISED STATUTES §§407.010 ET SEQ. (AGAINST ALL DEFENDANTS)

68.     Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 67 of this Complaint as though each were set forth and alleged herein in full.

69.     At all times mentioned herein, Missouri Revised Statute §407.020 prohibited unfair, deceptive, untrue or misleading advertising.

70.     Notwithstanding the aforementioned statute, and the duty imposed upon defendants, and each of them, by this Act, Defendants, and each of them, engaged in unconscionable sales practices in the following manner:

a.      Advertised and offered SWATS "Ultimate Sports Spray" for sale as a product fit for consumption by competitive athletes or the general public when Defendants, and each of them, knew or reasonably should have known that said product was unfit for consumption by competitive athletes or individuals in the general public.

b.      Affirmatively misrepresented to plaintiffs and other members of the public that its product was safe, pure, subjected to quality checks, clinically tested and fit for consumption by competitive, hard training athletes or individuals in the general public when the Defendants, and each of them, knew or reasonably should have know that such statements were false since SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

c.      Continued to produce and advertise SWATS "Ultimate Sports Spray" as fit for consumption when Defendants, and each of them, knew or reasonably should have known that SWATS "Ultimate Sports Spray" was unfit for consumption by competitive, hard training athletes or individuals in the general public, thereby deceiving consumers as to its true nature.

71.     Upon information and belief, at the time Defendants, and each of them, engaged in the aforementioned practices, they did so with the intent to unfairly compete with other supplement manufacturers and/or distributors for the patronage of plaintiffs

23

and other consumers. To do so, Defendants, and each of them, engaged in a practice likely or capable of deceiving and misleading consumers, intended to have the plaintiffs and other consumers rely upon these deceptive practices and statements and purchase products manufactured and sold by defendants.

72. The misrepresentations made by Defendants, and each of them, were made with a knowing and reckless indifference toward, and a disregard for the rights of athletes and consumers to make informed decisions about the products they purchase and consume.

73. The contents SWATS "Ultimate Sports Spray", namely that it contained methyltestosterone, was a direct and proximate cause of the injuries and damages suffered by plaintiff.

74. Except for defendants' representations regarding the label, safety, purity, appropriateness and quality of SWATS "Ultimate Sports Spray", plaintiff would never have purchased or used it.

75. Upon information and belief, Defendants, and each of them, knew that the product, SWATS "Ultimate Sports Spray" was contaminated with methyltestosterone.

76. Plaintiff used SWATS "Ultimate Sports Spray" for its intended purpose and in a way that was reasonably foreseeable.

77. As a direct and proximate result of the defendants' deceptive and dishonest sales practices, plaintiff sustained injuries. As a consequence of these injuries, plaintiff has sustained damages. Said damages include but are not limited to physical contamination and intrusion of plaintiff's bodies, including contamination with dangerous substances that are harmful to plaintiff injuring him in such a way as to not be able to

24

complete his duties and job as a professional football player. Plaintiff's injuries also include the loss of once-in-a-lifetime opportunities and plaintiff's reputation. As a consequence of these injuries, plaintiff has incurred the following damages in amounts to be proven at trial:

    a.    Loss of past income and earning capacity in an amount to be proven at trial;

    b.    Loss of income and earning capacity which plaintiff can reasonably be expected to have enjoyed in the future in an amount to be set forth at trial;

    c.    Past and future pain, suffering and humiliation in an amount to be set forth at trial; and

    d.    Loss of enjoyment of life, past and future, in an amount to be set forth at trial.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against defendants, and each of them as follows:

    a.    Judgment for Plaintiff against Defendants, and each of them, for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

    b.    Judgment for Plaintiff against Defendants, and each of them, for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

    c.    Judgment for Plaintiff against Defendants, and each of them, for punitive damages in an amount consistent with the allegations contained herein and to be proven at trial.

d.     Judgment for Plaintiff against Defendants, and each of them, for

reasonable attorneys' fees pursuant to Missouri Revised Statutes §407.025.1, in an

amount consistent with the allegations contained herein and to be proven at trial.

e.     Judgment for Plaintiff against Defendants, and each of them, in an

amount as supported by the allegations in this Complaint and the evidence adduced at

trial, that Plaintiff be awarded the costs of suit incurred herein, and that Plaintiff be

awarded such other costs and relief as the court deems just and equitable.

RESPECTFULLY SUBMITTED,

DATED: April *§§* 2010

By: Howard L. Jacobs

Howard L. Jacobs
LAW OFFICES OF HOWARD L. JACOBS
2815 Townsgate Road, Suite 200
Westlake Village, California 91361
Telephone:    (805) 418-9892
Facsimile:     (805) 418-9899
howard.jacobs@athleteslawyer.com

R. Daniel Fleck
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Telephone:    (307) 733-7290
Facsimile:     (307) 733-5248
fleck@spencelawyers.com

*Attorneys for Plaintiff David Vobora*

## JURY DEMAND

Plaintiff David Vobora hereby demands a trial by jury of all issues so triable

pursuant to Rule 38 of the Federal Rules of Civil Procedure.

RESPECTFULLY SUBMITTED,

DATED: April 26 2010

By: Howard L. Jacobs

Howard L. Jacobs
LAW OFFICES OF HOWARD L. JACOBS
2815 Townsgate Road, Suite 200
Westlake Village, California 91361
Telephone:     (805) 418-9892
Facsimile:      (805) 418-9899
howard.jacobs@athleteslawyer.com

R. Daniel Fleck
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
Telephone:     (307) 733-7290
Facsimile:      (307) 733-5248
fleck@spencelawyers.com

*Attorneys for Plaintiff David Vobora*